**FILED**

Jeanne A. Naughton, CLERK

**September 6, 2018**

United States Bankruptcy Court
Newark, NJ

By:  /s/ Juan Filgueiras, Courtroom Deputy

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>40 LAKEVIEW DRIVE,<br><br>Debtor. | Case No.:      15-14692  VFP<br><br>Chapter   7 |
| JAY L. LUBETKIN, Chapter 7 Trustee for<br>40 LAKEVIEW DRIVE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>IRFAN SHEIKH and QUINCY WONG,<br><br>Defendants. | Adv. Pro. No.: 16-1165 VFP |

## TRIAL OPINION

**APPEARANCES**

**RABINOWITZ, LUBETKIN & TULLY, LLC**
Jay L. Lubetkin, Esq.
Larry K. Lesnik, Esq.
293 Eisenhower Parkway, Ste. 100
Livingston, NJ  07039
Attorneys for Chapter 7 Trustee

**HAROLD C. PETZOLD, Jr., ESQ.**
315 Burnt Meadow Road
Ringwood, NJ  07456
Attorney for Quincy Wong

**HONORABLE VINCENT F. PAPALIA**

## I.    <u>INTRODUCTION</u>

This matter is before the Court following the trial on November 8, 2017 and November 15, 2017 on the remaining four counts of the seven-count Adversary Complaint (the "Complaint") filed by Chapter 7 Trustee Jay L. Lubetkin, Esq. (the "Trustee") to avoid a $200,000 mortgage (the "Mortgage") granted to defendant Quincy Wong ("Quincy") by the Debtor, 40 Lakeview Drive, LLC (the "Debtor"), with respect to the real property known as 16 Avenue A, Mahwah, New Jersey.   Quincy is the father of Debtor's former principal, Steven Wong and father-in-law of Debtor's current principal, Grace Wong.   The Trustee seeks to avoid the Mortgage as a fraudulent transfer under the New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. § 25:2-20 *et seq.*, as incorporated into bankruptcy proceedings through 11 U.S.C. § 544(b)(1).[1]   For the reasons set forth below, the Court avoids the Mortgage and finds the Property free and clear of that lien.

## II.    <u>JURISDICTIONAL STATEMENT</u>

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Orders of Reference entered by the United States District Court on July 10, 1984 and amended on September 18, 2012.   This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), (K) and (O).   Venue is proper in this Court under 28 U.S.C. § 1408.   The Court issues the following findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052. To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

---

[1] The trial transcripts are docketed at Dkt. No. 69, Nov. 8, 2017 ("Trial Tr. vol. 1") and Dkt. No. 68, Nov. 15, 2017 ("Trial Tr. vol. 2").

### III.   <u>STATEMENT OF FACTS</u>

#### A.  <u>Facts Related to Subject Mortgage</u>

The Debtor was established on October 29, 2005 as a "Real Estate" business.[2]  By Deed

dated April 14, 2009, an entity called Tribeca Lending Corporation transferred the real property at

16 Avenue A, Mahwah, New Jersey (the "Avenue A Property") into the Debtor for a stated

consideration of $85,000.[3]  The Deed was recorded on May 22, 2009.[4]  There is no evidence that

the Debtor ever conveyed or agreed to convey the Avenue A Property to any other entity or

individual.  At the time of its filing, the Debtor also owned certain other real property located at

40 Lakeview Drive in Hamburg, New Jersey.

The transactions that are the subject of this Adversary Proceeding occurred on September

5, 2012.  Pursuant to a Mortgage Note (the "Note") dated September 5, 2012, Grace Wong

borrowed $200,000 from Quincy Wong, as Note Holder (the "Quincy Loan").[5]  As referenced in

the Note, it was secured by a Commercial Guarantee (ultimately titled "Corporate Guarantee") and

a Mortgage from the Debtor on the Avenue A Property.[6]  Under the Corporate Guarantee entered

on September 5, 2012, the Debtor guaranteed the entire "Debt" from Grace, as Borrower, to

Quincy, as Lender.[7]

The Corporate Guarantee was secured by a Mortgage, dated September 5, 2012, for

$200,000 from Debtor, as Mortgagor, to Quincy Wong as Mortgagee (the "September 5, 2012

---

[2] Main Dkt. No. 67, SoFA, ¶ 18a, filed Aug. 11, 2015.
[3] Ex. P-14, Deed dated Apr. 14, 2009.
[4] Ex. P-14, Deed dated Apr. 14, 2009.
[5] Ex. P-1, Note dated Sept. 5, 2012.
[6] Ex. P-1, Note dated Sept. 5, 2012, at 2.
[7] Ex. P-2, Corporate Guarantee dated Sept. 5, 2012.  The Note and Mortgage are identified in the Corporate Guarantee under the term "loan documentation," which is defined in the Note, Ex. P-1, at 2.

Mortgage").[8]   The Mortgage was recorded on September 7, 2012 and is the subject of this

Adversary Proceeding.[9]

The Note required Grace to: (i) pay interest in a lump-sum amount of $20,000; and (ii)

repay the Loan (including interest) to Quincy Wong in a lump sum on or before the September 5,

2013 maturity date (a one-year term).[10]   There was no evidence produced at trial that Grace made

the $20,000 payment or any other payments to Quincy on account of the Note.   Accordingly, the

Court finds that no such payments were made.

The Mortgage reiterated the payment terms of the Note and warranted title under

"Promises":

**Promises**.  Mortgagor makes the following promises to the Mortgagee: . . .

3.      Title to the premises is warranted.  This means that Mortgagor [the Debtor]
        owns the Property and will defend said ownership against all claims.[11]

The Mortgage also recited: "This Mortgage is a first mortgage on the property."[12]  Grace signed

the Mortgage on behalf of the Debtor.[13]

The parties dispute the relevance of this transaction to an earlier Note, dated August 2,

2012, between "Robert Schroeder and All Points International Distributors, Inc.," as Promisor

(collectively, "Schroeder") and Debtor, as Note Holder, purportedly memorializing a loan of

$200,000 from Debtor to Schroeder (the "Schroeder Loan," or the "Schroeder Note").[14]  The

Schroeder Note required lump-sum repayment of principal and interest on or before August 1,

---

[8] Ex. D-1, Mortgage dated Sept. 5, 2012.
[9] Ex. D-1, Mortgage recorded Sept. 7, 2012.
[10] Ex. P-1, Note dated Sept. 5, 2012, at 1.
[11] Ex. D-1, Mortgage dated Sept. 5, 2012, at 1.
[12] Ex. D-1, Mortgage dated Sept. 5, 2012, at 1.
[13] Ex. D-1, Mortgage dated Sept. 5, 2012, at 2.
[14] Ex. D-2, Schroeder Note dated Aug. 2, 2012.  The Court uses the word "purportedly" because there was no evidence adduced at trial that the Debtor itself actually loaned any funds to Schroeder.

2013 (a one-year term).[15]   The Schroeder Note defined interest as "$35,000.00," consisting of "$20,000.00 to Quincy Wong loan" and "$15,000.00 fee to 40 Lakeview Drive, LLC."[16]  Robert Schroeder signed this Note both individually and for All Points International Distributors, Inc.[17] There was no evidence submitted at trial that: (i) the $20,000 was paid to "the Quincy Wong loan"; (ii) the $15,000 fee was paid to the Debtor; (iii) any payments at all were made on the Schroeder Note; or (iv) the Debtor (as opposed to Grace and/or Steven Wong) actually loaned any money to Schroeder.  Accordingly, the Court finds that no such payments or loans were made.

### B.  The Bankruptcy Case

The Debtor filed a voluntary Chapter 11 petition on March 17, 2015 over the signature of Grace Wong as Member.[18]  A motion to dismiss filed on March 25, 2015 by PNC Bank, N.A. indicated that the Debtor filed the petition to stay the scheduled sheriff's sale of the only other real property owned by the Debtor on the petition date, 40 Lakeview Drive, Hamburg, New Jersey.[19] On May 22, 2015, the Office of the United States Trustee filed a motion to convert or dismiss Debtor's case on numerous grounds (failure to retain counsel, failure to file schedules, and Grace Wong's announced intention not to appear at the 341 meeting of creditors).[20]  The Court converted the case to one under Chapter 7 by Order entered on July 28, 2015, based on a finding that conversion rather than dismissal was in the best interest of creditors and the estate.[21]   Jay L. Lubetkin, Esq., was appointed Chapter 7 Trustee by Notices docketed on August 3, 2015.[22]

---

[15] Ex. D-2, Schroeder Note dated Aug. 2, 2012, at 1.
[16] Ex. D-2, Schroeder Note dated Aug. 2, 2012, at 1.
[17] Ex. D-2, Schroeder Note dated Aug. 2, 2012, at 2.
[18] Main Dkt. No. 1, Petition, at 3.
[19] Main Dkt. No. 11-2, Certif. of Anne Marie P. Kelley, Esq., for PNC (Kelley Certif.), ¶¶ 26-27.
[20] Main Dkt. No. 41-1, OUST Br., ¶¶ 3-13.
[21] Main Dkt. No. 57, Order entered July 28, 2015.
[22] Main Dkt. Nos. 60, 61.

The Debtor did not file its schedules until August 11, 2015, nearly five months postpetition.[23]  The schedules indicate that Grace Wong ("Grace") was 100% owner of the Debtor and that the interest of her husband, Steven Wong ("Steven") had been terminated on May 8, 2015.[24]  The Debtor's Statement of Financial Affairs described Steven Wong as "non-member Economic Interest Hold[e]r."[25]

The Debtor scheduled the two real properties it owned on Schedule A:  (i) 16 Avenue A, Mahwah, New Jersey with a value of $120,000 secured by a $200,000 Mortgage held by Quincy Wong; and (ii) 40 Lakeview Drive, Hamburg, New Jersey (mislabeled "40 Lakeview LLC") with a value of $220,000 and no mortgage scheduled (the "40 Lakeview Property"),[26] even though PNC Bank ("PNC") had a mortgage on that property, had filed a foreclosure action and was about to foreclose when the Debtor filed.[27]  The Schedules were signed by Grace Wong and filed under penalty of perjury.[28]

In the Debtor's bankruptcy case, the Trustee filed a Notice of Assets on August 7, 2015 and identified the assets as "Bank Account proceeds and potential equity in real property."[29]  The Bankruptcy Court Clerk's Office set the claims bar date at November 5, 2015 in compliance with FED. R. BANKR. P. 3002(c).  Four creditors filed timely proofs of claim:

| CLAIM NO. | CREDITOR | DATE FILED | AMOUNT | DESCRIPTION |
|---|---|---|---|---|
| 1-1 | IRS | 5/13/15 | $4,680 | General unsecured |
| 1-2 | IRS | 9/11/17 | $0 | Amending the above to $0 |
| 2-1 | PNC | 7/17/15 | $907,745 | Secured by 40 Lakeview Property |

---

[23] Main Dkt. No. 67, Missing Schs. filed Aug. 11, 2015.
[24] Main Dkt. No. 67, SoFA, ¶¶ 21b, 22b.
[25] Main Dkt. No. 67, SoFA, ¶ 22b.
[26] Main Dkt. No. 67, Schs. A and D.
[27] Main Dkt. No. 11-2, Kelley Certif., ¶¶ 1, 15, 20-27.
[28] Main Dkt. No. 67, at 3, 33.
[29] Main Dkt. No. 66, Notice of Assets filed Aug. 7, 2015.

| CLAIM NO. | CREDITOR | DATE FILED | AMOUNT | DESCRIPTION |
|---|---|---|---|---|
| 2-2 | PNC | 10/29/15 | $9,702 | "Secured" balance due after property sale and other executions[30] |
| 3-1 | Quincy Wong | 7/17/15 | $200,000 | Secured by the Avenue A Property (valued in Claim at $150,000; Mortgage attached) |
| 4-1 | UST | 10/27/15 | $650 | Unpaid Chapter 11 fees[31] |

### C.  The Adversary Proceeding

The Trustee timely filed the instant seven-count Complaint on March 2, 2016 against Defendants Quincy Wong and Irfan Sheikh.[32]  The Trustee sought to avoid both mortgages as fraudulent transfers (constructive or actual) on the grounds that the Debtor received inadequate or no consideration for the encumbrance of the Property and that the transfer was made with the intent to hinder, delay or defraud creditors.  The seven counts of the Complaint are:

   I   Avoidance of Irfan Sheikh Mortgage under N.J.S.A. § 25:2-3
   II   Avoidance of Irfan Sheikh Mortgage under New Jersey common law
   III   Avoidance of Quincy Wong Mortgage under New Jersey Uniform Fraudulent Transfer Act
   IV   Avoidance of Quincy Wong Mortgage under N.J.S.A. § 25:2-3
   V   Avoidance of Quincy Wong Mortgage under New Jersey common law
   VI   Determination of "Nature, Extent and Validity" of Irfan Sheikh and Quincy Wong liens
   VII   Counsel fees[33]

After Defendant Sheikh proved that his mortgage had been discharged, the Trustee voluntarily dismissed his claims against Sheikh by Stipulation docketed on December 12, 2016.[34]

---

[30] Amended Claim #2-2 of PNC, Ex. A, *Amount Due and Owing*, at 3.  Amended Claim #2-2 indicates that the amount due the Bank as of October 29, 2015 after postpetition credits from foreclosure of 40 Lakeview Avenue; foreclosure of other properties; and other credits.

[31] On January 13, 2016, the Heritage Lakes at the Quarry Condo Association filed unsecured Claim #5-1 for $1,772.

[32] Dkt. No. 1, Compl., ¶¶ 3, 9.

[33] Dkt. No. 1, Compl.

[34] Dkt. No. 25, Stip.; Exs. D-5 and D-6, Sheikh Mortgage and "rerecorded" Satisfaction.

As a result, Counts I and II have been dismissed in their entirety, and Count VI has been dismissed as it relates to Irfan Sheikh.

This Adversary Proceeding and the main bankruptcy case of 40 Lakeview have been marked by extensive and, in this Court's view, unnecessary and vexatious litigation by the Wongs (individually and on behalf of the Debtor) in making or defending motions and filing numerous motions for reconsideration in this Court, and appeals and/or motions for reconsideration in the District Court and the Third Circuit. The vexatious litigation also resulted in no less than ten orders holding Grace, Quincy and/or Harold C. Petzold, Jr., Esq. in contempt and/or imposing sanctions by this Court.[35]  There have also been at least eight appeals to the District Court [Docket Nos. 15-07092, 17-01191, 17-03959, 17-05643, 17-05730, 17-07790, 18-05219 and 18-05551] and three to the Third Circuit [Docket Nos. 17-2935, 18-2010 and 18-2459], with multiple motions for reconsideration and/or rehearing filed in those courts as well.

Many of the motions for reconsideration and/or appeals were based on meritless or shifting arguments. One example of the shifting positions taken by the Debtor and the Wongs is the status of the ownership of and liens on the Avenue A Property. After it became clear that the Trustee would seek to sell the Avenue A Property and seek to avoid Quincy Wong's Mortgage, the Debtor and/or Grace Wong attempted multiple times to argue that the Property is not property of the estate:

- In opposition to the Trustee's application filed on January 25, 2017 to retain a realtor,[36] the Debtor filed an Objection on the grounds that Quincy holds "equitable title" to the Avenue A Property (even though he had a Mortgage that is the subject of this action).[37]  The Court overruled the Objection and entered the Retention Order on March 9, 2017.[38]

---

[35] Dkt. Nos. 224, 300, 330, 383, 437 and 443 in Main Case and Dkt. Nos. 21, 65, 70 and 83 in this Adversary Proceeding.

[36] Main Dkt. No. 186.

[37] Main Dkt. No. 190, at 2.

[38] Main Dkt. No. 198.

- In opposition to the Trustee's May 8, 2017 Motion to Compel Grace to turn over keys and access codes so that the Realtor could show the Avenue A Property,[39] Grace filed an Objection couched in the argument that *she* holds "equitable title" in the Avenue A Property because she contributed the funds to its purchase in 2009.[40] The Court entered an Order on June 29, 2017 compelling Grace, as a member of the Debtor, to give the Trustee access to the Avenue A Property under 11 U.S.C. § 542(a) and ordering that no application for reconsideration or appeal would stay Grace's duty to comply with this Order.[41]

- In opposition to the Trustee's July 6, 2017 Motion to hold Grace in contempt of the June 29, 2017 Order,[42] Grace filed an Objection that argued in part that the Court had not yet determined the "rightful owner" of the Avenue A Property.[43] The Court overruled the Objection and entered an Order on July 25, 2017 holding Grace in contempt.[44]

- On August 3, 2017, Grace moved for a stay of the July 25, 2017 Contempt Order, pending appeal, on the argument that the Court had not established ownership of the Avenue A Property.[45] The Court denied her motion by Order entered on August 9, 2017.[46]

- On August 7, 2017, the Debtor filed Amended Schedule A/B (and others) and Statement of Financial Affairs ("SoFA") that certified in most relevant part that Debtor owned *no* real property but held the Avenue A Property in trust for Grace *and* Steven Wong.[47] The Trustee filed a Certification in Opposition asking the Court to find this amendment to be in bad faith and to disallow it.[48]

The Trustee on August 22, 2017 formally moved to strike Debtor's Amended Schedules on the grounds of bad faith and judicial estoppel.[49] The Debtor filed Objections on the argument that Grace and Steven Wong were "beneficial owners" of the Avenue A Property and cross-moved

---

[39] Main Dkt. No. 202.
[40] Main Dkt. No. 211, ¶ 2.
[41] Main Dkt. No. 212.
[42] Main Dkt. No. 217.
[43] Main Dkt. No. 262, at 3.
[44] Main Dkt. No. 224.
[45] Main Dkt. No. 238.
[46] Main Dkt. No. 257.
[47] Main Dkt. No. 247, Sch. A/B, Part 9, ¶ 54; SoFA, Part 11, ¶ 21.
[48] Main Dkt. No. 248, ¶¶ 6-9; Main Dkt. No. 251, Reply, at 2.
[49] Main Dkt. No. 270.

to compel the Trustee to abandon the Avenue A Property.[50]  By Order entered on September 15,

2017, the Court struck Debtor's Amended Schedules (filed at Main Dkt. No. 247) and denied the

Debtor's cross-motion to compel the Trustee to abandon the Avenue A Property.[51]

The September 15, 2017 Order determined that the "Debtor is judicially estopped from

asserting inconsistent and/or conflicting positions as to the ownership of the Property," i.e., that it

was owned by any person or entity other than the Debtor, 40 Lakeview, for all the reasons set forth

on the record at the September 12, 2017 hearing.  Those reasons included the record ownership of

the Avenue A Property by the Debtor, the listing of the Avenue A Property (and the 40 Lakeview

Property) as owned by the Debtor on its schedules, Debtor's invocation of the automatic stay to

stop the foreclosure sale of the 40 Lakeview Property, while later asserting varying and shifting

claims as to who did own it; i.e., first Quincy, then Grace and then Grace and Steven, when it was

at all times (since 2009) owned by the Debtor.  As a result, this Court found:

> that the proposed amendments to the Schedules relating to the
> ownership of the Property were made in bad faith, would be prejudicial
> to creditors and the estate, *and that the Debtor is judicially estopped*
> *from asserting inconsistent and/or conflicting positions as to the*
> *ownership of the Property*; and the Court having taken judicial notice of
> the record in this case, including numerous prior motions for
> reconsideration and other similar relief filed by the Debtor and its
> principal; it is hereby
>
> **ORDERED** that the Motion is granted as set forth herein; and it
> is further
>
> **ORDERED** that the Amended Schedules filed by the Debtor on
> August 7, 2017 (Dkt. No. 247) be and hereby are stricken; and it is
> further
>
> **ORDERED** that the Debtor, Debtor's members and Debtor's
> attorney(s) are all barred from filing any further amended schedules on
> behalf of the Debtor unless otherwise ordered by this Court, after notice
> and a hearing and upon good cause shown. In addition, prior to filing

---

[50] Main Dkt. Nos. 278, 279, 281, Obj., ¶ 1.
[51] Main Dkt. No. 291.

any motion to amend the schedules in a manner that directly or indirectly relates to the Property, the Debtor must first obtain the written permission of the Court and demonstrate that the Debtor is not directly or indirectly seeking reconsideration of this Order; and it is further

**ORDERED** that the Debtor's Cross Motion to compel the Trustee to abandon real property at 16 Avenue A, Mahwah, New Jersey is DENIED.[52]

The District Court dismissed the Debtor's appeal of this September 15, 2017 Order by its own Order entered on March 8, 2018.[53]

### D. The Trial on November 8 and November 15, 2017

After extraordinary delays generated by the Debtor, Grace Wong and their affiliates, the Court entered a pretrial Order on May 9, 2017 between the Trustee and remaining Defendant, Quincy Wong; scheduled a trial for September 15, 2017, later rescheduled to October 25, 2017; required pretrial submission of exhibits and witness lists and provided for post-trial briefing only.[54] The Defendant's October 11, 2017 Witness List (along with the six exhibits acknowledged by the Trustee) named Grace Wong as Defendant's sole witness.[55]   On September 7, 2017, the Trustee issued a subpoena to Grace Wong pursuant to FED. R. CIV. P. 45/FED. R. BANKR. P. 9016 to compel her to appear at trial.[56]

On the October 25, 2017 trial date, the Trustee and his counsel timely appeared to try the case, but Grace and Defendant's counsel, Harold C. Petzold, Jr., Esq. ("Petzold"), arrived late and Petzold announced that he was ill and did not feel well enough to proceed.  These events are memorialized on the record on October 25, 2017 and summarized in the Trustee's November 1,

---

[52] Main Dkt. No. 291, Sept. 15, 2017 Order (emphasis supplied).
[53] Main Dkt. No. 397, Mar. 8, 2018 District Court Order.
[54] Dkt. No. 45, May 9, 2017 Order; Dkt. No. 69, Trial Tr. vol. 1, 44:22-45:5.
[55] The header on Defendant's Witness List and Exhibits also indicates that they were faxed to the Court on October 24, 2017.
[56] Dkt. No. 69, Trial Tr. vol. 1, 8:7-18; Ex. P-10, Trustee's Subpoena dated Sept. 7, 2017.

2017 Application for Sanctions, filed with the Court's leave, against Petzold and Quincy for the expense to the Trustee and his counsel of appearing when the Defendant's counsel was late and/or not ready to proceed and Defendant did not appear at all.[57]  Over the Trustee's strong objection, the Court carried the trial for two weeks to November 8, 2017.

On November 7, 2017 Grace, via e-mail to chambers, asked the Court to "stay" the bankruptcy case and the trial on the grounds that she had filed a "complaint" about the case to the U.S. Court of Appeals for the Third Circuit.[58]  She also opined that it was "not appropriate" for her to appear at trial.[59]  Via chambers e-mail, Petzold submitted a separate letter supporting her request, and the Trustee submitted an objection.[60]  The Court responded to Trustee, Petzold and Grace in a November 7, 2017 letter that denied the request for a stay or further adjournment; stated that Grace would be permitted to testify as "to any factual matters as to which she has personal knowledge and that are relevant"; and directed that:  "The trial will go forward as scheduled on November 8, 2017 at 10:00 a.m."[61]

At the November 8, 2017 trial, Petzold appeared with no witnesses, having advised that Quincy "doesn't drive anymore"; making no excuse for Grace; and offering to produce another person, possibly Steven as a witness.[62]  This proffer was made even though Petzold had not previously identified Steven as a witness, and Steven had responded to Trustee's prior discovery demands in the main bankruptcy case by saying that he had no knowledge about the Debtor.  In fact, Steven certified on October 26, 2015 in response to interrogatories served by the Trustee:

---

[57] Dkt. No. 63, Trustee's Appl., filed Nov. 1, 2017, ¶¶ 1-2.  By Order entered on November 14, 2017, the Court sanctioned Quincy and Petzold $2,745.30, jointly and severally, for the expenses incurred by the Trustee for October 25, 2017, when Defendant was not ready to proceed.  Dkt. No. 65, Nov. 14, 2017 Order, at 2.
[58] Dkt. No. 64, Response Ltr. from Court dated Nov. 7, 2017, at 3.
[59] Dkt. No. 64, Response Ltr. from Court dated Nov. 7, 2017, at 3.
[60] Dkt. No. 64, Response Ltr. from Court dated Nov. 7, 2017, at 4-11.
[61] Dkt. No. 64, Response Ltr. from Court dated Nov. 7, 2017, at 1-2.
[62] Dkt. No. 69, Trial Tr. vol. 1, 3:17-4:25; 6:1-17; 8:19-9:1 (Petzold's summary of his witness issues).

> 2.    I have no personal knowledge concerning the Debtor, and can provide no testimony with respect to the debtor.    That information would be better obtained from the Debtor itself.[63]

Further, Steven responded on October 26, 2015 to the Trustee's deposition subpoena with the following:

> Attached are my answers to the subpoena provided by your office.[64]

>> As indicated, I have none of the information requested regarding the Debtor.  I am no longer a member of the Debtor and have neither possession or control of its books and documents, and I am not aware of the contents of same.  I have no knowledge of the workings of the Debtor and as a non-member have no authority to speak on behalf of the Debtor.  My deposition will provide none of the information you seek with respect to this Debtor.  I respectfully request to be excused from appearing.[65]

The trial began on November 8, 2017, and the Trustee presented his case.  The Trustee's counsel elected to call only the Trustee as a witness.[66]  At the end of the Trustee's testimony and again over the Trustee's strong and understandable objection, the Court continued the trial to November 15, 2017 at Petzold's request so that he could arrange for a witness; required Petzold to notify Trustee by November 9, 2017 whom Petzold intended to call as a witness; and required Petzold to produce that witness for deposition by the Trustee on November 13, 2017, as no depositions had been taken.[67]  Steven Wong was identified as the Defendant's witness and was apparently deposed.  The trial concluded on November 15, 2017 after Steven testified as Defendant's only witness.[68]  Plaintiff and Defendant filed post-trial submissions on February 20, 2018.[69]  The Trustee supplemented his submission on February 26, 2018 with the February 7, 2018

---

[63] Ex. P-13, Steven Wong Certif., dated Oct. 26, 2015, ¶ 2.
[64] Ex. P-15, Steven Wong Ltr. dated Oct. 26, 2015.  The attachments referenced therein are not identified.
[65] Ex. P-15, Steven Wong Ltr. dated Oct. 26, 2015.
[66] Dkt. No. 69, Trial Tr. vol. 1, 12:15-20.
[67] Dkt. No. 69, Trial. Tr. vol. 1, 36:22-37:24; 39:21-41:8; 42:2-4; 42:18-21.
[68] Dkt. No. 68, Trial Tr. vol. 2.
[69] Dkt. Nos. 75, 76, respectively.

deposition of Leonard A. Haine, Debtor's accountant, whom Steven cited during cross-examination in connection with preparation of the Debtor's 2012 tax return.[70]

### E.  Testimony at Trial on November 8, 2017 and November 15, 2017

As noted, the only two witnesses called at trial were the Trustee, who testified on November 8, 2017, and Steven Wong, who testified on November 15, 2017.  The relevant portions of their testimony are summarized below.

### (1)  Testimony of Chapter 7 Trustee Jay L. Lubetkin, Esq., for the Plaintiff

The Trustee testified that he reviewed the Debtor's "schedules and statements of financial affairs, the Debtor's 2012 tax return, and various other documents," including the pleadings in the case.[71]  At the time of the September 5, 2012 Mortgage, the Debtor owned two parcels of real property, 40 Lakeview Drive, Hamburg, New Jersey and the property located at 16 Avenue A, Mahwah, New Jersey.[72]  PNC had a mortgage dating from September 2008 on the Hamburg property (the "PNC Loan").[73]  The Trustee described the PNC Loan as a "line of credit transaction" and explained later in his testimony that the Debtor had guaranteed this loan.[74]  By January 2010, the Debtor had fully borrowed the PNC line of credit.[75]  The Debtor defaulted on the PNC Loan in June 2012, and PNC filed actions on its mortgage and on its note in December 2012.[76]  These

---

[70] Dkt. Nos. 80, 80-1, Trustee's Certif. covering Feb. 7, 2018 Haine dep.; Dkt. No. 68, Trial Tr. vol. 2, 55:5-56:2. The Trustee submitted a portion of the 2012 return at Ex. P-16 (which was marked for identification but never admitted into evidence).  At the November 15, 2017 trial, the Court directed Petzold to produce Debtor's complete 2012 tax return and indicated that there may be consequences, including an adverse inference, if it were not produced.  Dkt. No. 68, Tr. vol. 2, 52:13-53:18; 78:14-20.  Debtor's complete 2012 tax return was never provided to the Court.

[71] Dkt. No. 69, Trial Tr. vol. 1, 17:20-22.

[72] Dkt. No. 69, Trial Tr. vol. 1, 18:4-9.

[73] Dkt. No. 69, Trial Tr. vol. 1, 18:10-15.

[74] Dkt. No. 69, Trial Tr. vol. 1, 18:10-15; 21:4-8.  The Trustee testified on cross-examination that none of the proceeds of the PNC line of credit went to the Debtor: "I've seen no records that evidence any infusions into 40 Lakeview Drive from PNC.  My understanding is the borrower on that line of credit was Grace Wong and Grace Wong took the money and used it as she deemed appropriate."  Dkt. No. 69, Trial Tr., vol. 1, 24:6-9.

[75] Dkt. No. 69, Trial Tr. vol. 1, 19:16-20.

[76] Dkt. No. 69, Trial Tr. vol. 1, 18:23-25; 19:1-3; 19:7-11.

actions resulted in judgments of $1,305,000 against the Debtor and other affiliated entities in October 2014.[77]

The Trustee testified that the Mortgage granted to Quincy on the real property at 16 Avenue A, Mahwah, New Jersey encumbered Debtor's "one unencumbered sole valuable asset" and "resulted in stripping away from PNC" another possible source of recovery for PNC.[78]

The Trustee further testified that the Debtor gave Quincy the September 5, 2012 Mortgage for no consideration.[79]  The Trustee elaborates that the September 5, 2012 Mortgage:

> completely stripped away the only available equity that existed in the [Debtor] and purported to provide it to an insider, an insider *for no consideration*.[80]

The Trustee opined that the Debtor was balance-sheet insolvent on September 5, 2012, based on the value of the two real properties ($220,000 for the 40 Lakeview Property and $120,000 for the Avenue A Property) against the $1,100,000 obligation on the PNC line of credit that was in default at the time (and was afterwards reduced to judgment for $1,305,000), before even considering the $200,000 Mortgage to Quincy.[81]  To further evidence the Debtor's insolvency, the Trustee also testified that the Debtor's 2012 tax return showed a loss of $24,769 and that the 2013 return showed rental income of only $13,200 per year, a figure that "generally corresponds" to recent information from the tenant and his roommate, even though the rent revenues had not been paid to the estate in the two-and-one-half years that the Trustee had been involved with the case.[82] The Trustee concluded that the Debtor was insolvent when it extended the mortgage to Quincy on

---

[77] Dkt. Nos. 67 (Sch. F) and 69, Trial Tr. vol. 1, 19:7-11.
[78] Dkt. No. 69, Trial Tr. vol. 1, 19:21-20:1.
[79] Dkt. No. 69, Trial Tr. vol. 1, 19:25-20:1.
[80] Dkt. No. 69, Trial Tr. vol. 1, 22:8-11 (emphasis supplied).
[81] Dkt. No. 69, Trial Tr. vol. 1, 20:25-21:13.
[82] Dkt. No. 69, Trial Tr. vol. 1, 21:17-23; 22:17-22; 25:4-14.

September 5, 2012 and that the Debtor extended this mortgage with "actual intent to hinder, delay, and defraud PNC."[83]

On cross-examination, the Defendant elicited testimony from the Trustee concerning collection by and payment to PNC on its loan in 2013 and 2014 from Debtor and non-debtor sources,[84] but the Defendant adduced no facts to undermine the Trustee's testimony that the Debtor was insolvent on September 5, 2012 when it extended the $200,000 Mortgage to Quincy Wong, nor did he elicit any testimony that contradicted or in any way undermined the statement that no consideration was given to the Debtor for the Mortgage.

### (2)  Testimony of Steven Wong for the Defendant (and Debtor)

Steven Wong testified that he was a member of Debtor at its formation (established above at 2005); was a member at the time of the September 5, 2012 Mortgage; and ceased being a member "for purposes of governance when I filed personal bankruptcy in 2015 but I still maintain an economic interest in the [Debtor]."[85]  Although Steven denied in his October 26, 2015 responses to the Trustee's discovery demands that he had any knowledge of the Debtor's operations, he testified that he was "brought up to speed" for the purpose of testifying at trial.[86]  When questioned by the Trustee, Steven acknowledged that he was not "brought up to speed" in October 2015 in order to answer the Trustee's subpoena with the explanation that "I was no longer an operating member."[87] The Court notes the contrast to Steven's initial claimed lack of knowledge as to the Debtor with his subsequent change of position when called by his father to testify at trial and therefore views this testimony critically and with skepticism.

---

[83] Dkt. No. 69, Trial Tr. vol. 1, 20:14-20.
[84] Dkt. No. 69, Trial Tr. vol. 1, 28:11-29:7.
[85] Dkt. No. 68, Trial Tr. vol. 2, 4:20; 4:23-5:1; 5:5-11.
[86] Dkt. No. 68, Trial Tr. vol. 2, 31:11-32:4.
[87] Dkt. No. 68, Trial Tr. vol. 2, 31:13-16.

In support of the Defendant's "resulting trust" argument, Steven testified on direct examination that Grace and he purchased the Avenue A Property in 2009 with their own funds and that Dan Hediger, Esq., handled the closing transaction.[88]  Steven denied that the purchase money or the Avenue A Property itself was a gift, loan, or a capital contribution to the Debtor.[89]  Steven claimed that the Avenue A Property was "titled on the deed" to the Debtor "for purposes of administration" and for "property management."[90]  Here, the Court notes that the 40 Lakeview Property was also owned by this Debtor and that another Wong-owned entity, 69 North Franklin Turnpike, LLC, which was also a debtor in this Court (Case No. 15-16191), also owned real property.  The Court finds Steven's testimony that he and Grace owned the Avenue A Property in a resulting trust, notwithstanding actual title in the Debtor, is not credible and was transparently given to support a legal theory developed by the Defendant (and the Debtor) only after the Trustee sought to avoid the Mortgage.  The testimony is also at least consistent with the overwhelming evidence in this case that the Debtor owned the Avenue A Property.

Steven also testified on direct examination that, at the time of the September 5, 2012 Mortgage, based on the Debtor's complete 2012 tax return, Debtor had assets of $600,000, referring to the stated value of the capital account (which included five properties, 40 Lakeview, 16 Avenue A *and* three other properties the Debtor allegedly *did not* own); income of $90,000 from the rent of those same properties (that the Debtor allegedly did not own); and the $200,000 note receivable from Robert Schroeder.[91]  Although the Court required the Defendant to produce the complete 2012 tax return, which was to be entered into evidence as Exhibit D-7, the Defendant

---

[88] Dkt. No. 68, Trial Tr., vol. 2, 7:18-25.
[89] Dkt. No. 68, Trial Tr., vol. 2, 8:5-15; 12:13-16.
[90] Dkt. No. 68, Trial Tr., vol. 2, 8:3-8.
[91] Dkt. No. 68, Trial Tr., vol. 2, 12:17-13:3; 15:23-16:5.

never produced it to the Court.[92] The Court will not credit this inherently contradictory and self-serving testimony, especially without the complete documentation on which it was based.

The Court rejects Steven's self-serving and inconsistent testimony. Those inconsistencies were further highlighted on Steven's cross-examination and by the record in this case. As to ownership of the Avenue A Property, the Court again notes that it is listed as an asset on the Debtor's schedules, which Grace signed under penalty of perjury. Next, Steven acknowledges that he initially claimed the Avenue A Property as a personal asset on his bankruptcy schedules and subsequently removed it "[o]n the advice of my counsel"[93] to reflect that the Avenue A Property was owned by the Debtor. He did not "re-amend" his schedules after counsel stopped representing him to reflect a direct ownership interest in the Avenue A Property.[94] Shown the April 14, 2009 Deed transferring ownership of the Avenue A Property from Tribeca Lending Corporation into the Debtor (Ex. P-14), Steven read the elements of the document but appeared to refuse to acknowledge that it represents Debtor's ownership of the Avenue A Property. On questioning by the Trustee, Steven read into the record that portion of the September 5, 2012 Mortgage (Promises, paragraph 3) that warrants that the Mortgagor owns the Avenue A Property and responded to that clause as follows:

> Q    Let's look at Paragraph 3 in this mortgage. . . . Take a look
> at that and if you would read Paragraph 3 out loud.
>
> A    Title to the premises is warranted. This means that
> mortgagor owns the property and will defend said ownership
> against all claims.

---

[92] Dkt. No. 68, Trial Tr., vol. 2, 78:14-79:22. The Court directed the Defendant to produce the complete 2012 tax return by Friday, November 17, 2017, and indicated that the Court would entertain a request for an adverse inference if it were not produced. Dkt. No. 68, Trial Tr., vol. 2, 78:18-22.

[93] Dkt. No. 68, Trial Tr., vol. 2, 41:3-20; Case No. 15-18673 (VFP) (Steven L. Wong), Dkt. No. 25, Original Schedule A, filed May 27, 2015, showing 16 Avenue A, Mahwah, New Jersey as an asset; Dkt. No. 83, 1st Amended Schedule A, filed October 26, 2015, with 16 Avenue A, Mahwah, New Jersey deleted; Dkt. No. 88, 2nd Amended Schedule A, filed December 8, 2015, with 16 Avenue A, Mahwah, New Jersey deleted.

[94] Dkt. No. 68, Trial Tr., vol. 2, 41:21-42:9.

Q       Who is the mortgagor on this document?

A       [The Debtor].

Q       And on the second page is that your wife's signature on behalf of [the Debtor]?

A       It appears to be.[95]

Notwithstanding all the evidence to the contrary, Steven continued to insist that Grace and he own the Avenue A Property, individually.  For all the reasons stated above, this argument is rejected by the Court as unsupported by the facts, the applicable documents and the law.

Further, on direct examination, Steven was unable plausibly to connect the August 2, 2012 Schroeder Note to the September 5, 2012 Wong Note and Mortgage.  Steven testified (in response to a direct question from the Court) that the Debtor was to receive "$15,000 from Robert Schroeder for executing the [Schroeder] note."[96]  Steven testified that the terms of the Schroeder Note required repayment of $200,000 plus $20,000 to Quincy Wong, a statement patently incorrect, as the Note requires repayment of only "$20,000 to Quincy Wong loan."[97] In response to the question, clarified by the Court, to identify what consideration the Debtor received from Schroeder for the August 2, 2012 note, Steven answered:  "Mr. Schroeder issued his note to [the Debtor] because he received funds from [the Debtor]," with no further reference to Quincy.[98]

The Court also finds this testimony to be not credible.  Instead, it was plainly designed to provide an after-the-fact (and inconsistent) "explanation" for these transactions in an effort to avoid liability.  The Court finds that Grace and/or Steven borrowed $200,000 from Quincy to fund their loan to Schroeder, which was nominally made through the Debtor.  Grace and Steven then

---

[95] Dkt. No. 68, Trial Tr., vol. 2, 36:16-37:1.
[96] Dkt. No. 68, Trial Tr., vol. 2, 19:6-11.
[97] Dkt. No. 68, Trial Tr., vol. 2, 20:5-17; Ex. D-2, Aug. 2, 2012 Schroeder Note.
[98] Dkt. No. 68, Trial Tr., vol. 2, 21:22-22:2.

caused the Debtor to secure their loan from Quincy with the Debtor's Avenue A Property, with the Debtor receiving no consideration for that Mortgage. Thus, the Court finds that the Debtor did not receive reasonably equivalent value for the Mortgage from the Schroeder Note, which predated the Mortgage by a month and was never paid.

### IV.    ARGUMENTS OF PARTIES

In his post-trial submission, the Trustee argues that he may avoid the September 5, 2012 Mortgage which the Debtor granted to Quincy on the Avenue A Property because the Debtor was insolvent and received no value for the Mortgage and because Grace, individually, rather than the Debtor, received the $200,000 loan proceeds that the Mortgage secured. The Trustee asserts that he may avoid the Mortgage under one of four sections of the New Jersey Uniform Fraudulent Transfer Act, made applicable to bankruptcy cases by 11 U.S.C. § 544(b)(1)

> 11 U.S.C. § 544. Trustee as lien creditor and as successor to certain creditors and purchasers.
>
> (b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1). To prosecute a section 544(b) avoidance action, "a Trustee must demonstrate the existence of an actual unsecured creditor that existed on the bankruptcy petition date who could have also brought the claim under applicable state or federal law." *In re Tzanides*, 574 B.R. 489, 511 (Bankr. D.N.J. 2017). In this case, that creditor is PNC, among others.

### *A.* __Trustee's Four Arguments under the New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. § 25:2-20 *et seq.*__

(1)     The Trustee argues that the transfer is actually fraudulent under N.J.S.A.

§ 25:2-25(a) with respect to present or future creditors:

> N.J.S.A. § 25:2-25.  Transfers fraudulent as to present and future creditors.
>
> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> a.   With actual intent to hinder, delay, or defraud any creditor of the debtor;
> . . .

N.J.S.A. § 25:2-25(a).  The New Jersey Uniform Fraudulent Transfer Act has its own "badges of

fraud" at N.J.S.A. § 25:2-26 to establish fraudulent intent:

> N.J.S.A. § 25:2-26. Factors in determining fraudulent intent.
>
> In determining actual intent under subsection a. of R.S. 25:2-25 consideration may be given, among other factors, to whether:
>
> > a. The transfer or obligation was to an insider;
> > b. The debtor retained possession or control of the property transferred after the transfer;
> > c. The transfer or obligation was disclosed or concealed;
> > d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> > e. The transfer was of substantially all the debtor's assets;
> > f. The debtor absconded;
> > g. The debtor removed or concealed assets;
> > h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> > i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> > j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> > k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.J.S.A. § 25:2-26.

(2)     The Trustee argues that the transfer was constructively fraudulent under N.J.S.A.

§ 25:2-25(b)(1) as to present or future creditors:

N.J.S.A. § 25:2-25.  Transfers fraudulent as to present and future creditors.

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
. . .

b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
. . .

N.J.S.A. § 25:2-25(b)(1).

(3)     The Trustee argues that the transfer was constructively fraudulent as to a

pre-existing creditor under N.J.S.A. § 25:2-27(a):

N.J.S.A. § 25:2-27. Transfers fraudulent as to present creditors.

a.  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

N.J.S.A. § 25:2-27(a).

(4)     The Trustee also argues that the transfer was constructively fraudulent as to a

pre-existing creditor under N.J.S.A. § 25:2-27(b), where the transferee was an insider holding an

antecedent debt:

N.J.S.A. § 25:2-27. Transfers fraudulent as to present creditors.

b.  A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an

antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

N.J.S.A. § 25:2-27(b).  Three of the four arguments that the Trustee makes under the New Jersey Uniform Fraudulent Transfer Act require the Trustee to prove insolvency or near-insolvency ("the remaining assets . . . were unreasonably small").  N.J.S.A. § 25:2-25(b)(1).

### B.    The Defendant's Arguments

The Defendant argues:

(1)  The Debtor was not insolvent at the time of the transfer, by reference to the incomplete 2012 tax return that was produced at trial.  As noted, despite being directed to supply a complete copy, the Defendant never did so ("Ex. D-7");[99]

(2)  The Avenue A Property is not property of the bankruptcy estate because Grace and Steven contributed to the Debtor the funds to purchase the Avenue A Property and did not intend for those funds to be a gift, a loan, or a capital contribution to the Debtor. The Defendant argues that this means that the Debtor held the Avenue A Property in a "resulting trust" for Grace and Steven;[100]

(3)  The Chapter 7 Trustee cannot be a third-party beneficiary of this trust;[101]

(4)  Quincy did not commit common-law fraud in obtaining the mortgage.[102]

(5)  The Schroeder Note provided consideration to the Debtor for the September 5, 2012 Mortgage from the Debtor to Quincy.[103]

---

[99] Dkt. No. 76, Deft. Post-trial, I, ¶ 7.  Defendant never submitted Ex. D-7, which was to have been the complete 2012 tax return.  The Trustee submitted as an exhibit a portion of the Debtor's 2012 U.S. Return of Partnership Income, which was marked for identification as P-16.  However, the Trustee did not have the complete return, and the complete return was never provided or admitted into evidence.
[100] Dkt. No. 76, Deft. Post-trial, I, ¶ 8; II, at 5-8.
[101] Dkt. No. 76, Deft. Post-trial, II, at 4-5.
[102] Dkt. No. 76, Deft. Post-trial, II, at 3-4.
[103] Dkt. No. 76, Deft. Post-trial, I, ¶ 3.

## V.    LEGAL ANALYSIS

### A.    Ownership of 16 Avenue A, Mahwah, New Jersey

A deed is *prima facie* evidence of ownership of property and imposes on any party contesting ownership "the burden of showing to the contrary."[104]

The Defendant introduced no testimony or document to refute the *prima facie* evidence manifested by the Deed dated April 14, 2009 and recorded May 22, 2009 that the Debtor owns the Avenue A Property.[105]    Nor did Defendant sufficiently (or even minimally) rebut the other overwhelming evidence of the Debtor's ownership, including that (i) the Avenue A Property was listed as owned by the Debtor on its schedules and tax return; (ii) the documents evidencing the Quincy Loan, including the Note and Mortgage, all reference the Debtor as the owner of the Avenue A Property; and (iii) the Debtor filed its bankruptcy case to stay the sheriff's sale of another property it owned.  Notably, the Quincy Wong Mortgage (signed by Grace on behalf of the Debtor) warranted that the Debtor owned the Avenue A Property.

It was for these reasons (and others) that this Court rejected the belated and contrived arguments by the Debtor's principals and/or affiliates that the Avenue A Property is not property of the estate.  As was particularly set forth in the September 15, 2017 Order, the Debtor was judicially estopped from further arguing against estate ownership of the Avenue A Property.  For the same reasons and even without application of judicial estoppel, the Court separately finds that the Defendant failed to meet the heavy burden of showing that the Avenue A Property is not owned by the Debtor.[106]  Thus, the Court determines and reiterates that the Avenue A Property is owned

---

[104] *Petrullo v. Standard Fire Ins. Co.*, 118 N.J.L. 190, 192 (E.&A. 1937); *Depew v. Smith*, 120 N.J. Eq. 285, 286 (E.&A. 1936) (a deed "is evidential as to the date of the acknowledgment and as to the contents of the instrument itself, and must be accepted unless there is strong evidence to the contrary"); *Timmons v. Wigboldus*, 137 N.J.L. 733, 735 (E.&A. 1948).
[105] Ex. P-14, Deed dated April 14, 2009.
[106] Main Dkt. No. 291, *Order Striking Debtor's Amended Schedules and Denying Debtor's Cross Motion to Compel Abandonment* entered on September 15, 2017.

24

by the Debtor, is property of the bankruptcy estate and is subject to administration by the Chapter 7 Trustee.[107]   The only arguments that the Defendant advances as to the Avenue A Property not being owned by the Debtor are, for the most part, legal arguments which simply are not applicable here, as set forth in more detail below.

### B.  The Trustee's Claims under 11 U.S.C. § 544(b)(1)

Each of the four claims argued by the Trustee under the New Jersey Uniform Fraudulent Transfer Act is incorporated into the Bankruptcy Code through 11 U.S.C. § 544(b)(1).  11 U.S.C. § 544(b)(1) requires the Trustee to identify an actual "creditor holding an unsecured claim that is allowable under section 502 of this title. . . ."  11 U.S.C. § 544(b)(1); *In re Tzanides*, 574 B.R. 489, 511 (Bankr. D.N.J. 2017).  As noted above, the Trustee identifies PNC, as the "actual unsecured creditor that existed on the bankruptcy petition date" based on "the proofs of claim filed by PNC in this proceeding as well as the Debtor's schedules."[108] PNC filed Claim No. 2-1 on July 17, 2015 (while the case was still under Chapter 11) for $907,745.16.  After further postpetition credits, in part from the sale of real property (including the 40 Lakeview Property), PNC filed Amended Claim No. 2-2 on October 29, 2015 for $9,702.44.  Both proofs of claim indicate that the Debtor guaranteed the PNC debt; and the Debtor scheduled PNC on "F" as a general unsecured claim for $1,305,707.09, the unreduced amount of the debt, as of December 11, 2014.[109]  The Court finds that PNC (among others) was a general unsecured creditor of the Debtor with an allowable claim as of the Petition Date that provides sufficient support for the Trustee's avoidance actions under 11 U.S.C. § 544(b)(1).[110]

---

[107] 11 U.S.C. §§ 541(a) and 704(a)(1).
[108] Dkt. No. 75, Trustee Br., at 4-5.
[109] Dkt. No. 67, Sch. F.
[110] See also creditors listed at pp. 6-7, *supra*.

### C. **The Trustee's Claims for Constructive Fraud under the New Jersey Uniform Fraudulent Transfer Act**

#### (1) **Insolvency**

Three of the Trustee's four claims under the New Jersey Uniform Fraudulent Transfer Act require the Trustee to prove that the Debtor was insolvent or nearly insolvent at the time of the transaction which the Trustee seeks to avoid.[111]  At trial on November 8, 2017, the Trustee testified and concluded that the Debtor was balance-sheet insolvent when it extended the September 5, 2012 Mortgage to Quincy.  The Trustee testified that the Debtor, by January 2010, had borrowed to the limit of the $1,100,000 line of credit extended by PNC; had defaulted on that loan by June 2012 (three months prior to the Debtor's granting of the Mortgage to Quincy); and incurred judgments of $1,305,000 on the Mortgage and on the Note in October 2014.[112]  Against this debt, the Debtor had only two assets, 40 Lakeview Property, valued by the Debtor at $220,000 and the Avenue A Property, valued by the Debtor at $120,000.[113]  The Trustee also testified that the excerpt of the Debtor's 2012 tax return to which he had access showed a net loss of $24,769 for that year and that the 2013 return showed rental income of $13,200 per year, a figure that "generally corresponds" to recent information from the tenant and his roommate.[114]  The Trustee also observed that the Debtor's September 5, 2012 grant of a $200,000 Mortgage to Quincy on a

---

[111] N.J.S.A. § 25:2-25(b)(1) "Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction."
N.J.S.A. § 25:2-27(a).  "[T]he debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."
N.J.S.A. § 25:2-27(b).  "[T]he debtor was insolvent at that time, and the insider had reasonable cause to believe that the Debtor was insolvent."
[112] Dkt. No. 69, Trial Tr. vol. 1, 18:23-19:11; 19:16-20.
[113] Dkt. No. 69, Trial Tr. vol. 1, 20:25-21:17.
[114] Ex. P-16, U.S. Return of Partnership Income for 2012, at 4; Dkt. No. 69, Trial Tr. vol. 1, 21:17-23; 22:17-22; 25:4-14.

$120,000 property encumbered Debtor's "one unencumbered sole valuable asset" and "resulted in stripping away" another possible source of recovery for PNC and other creditors.[115]

Steven testified, from the Debtor's complete 2012 tax return (which the Defendant never produced to the Court as the Defendant was required to do),[116] that the Debtor had assets of $600,000 based on the stated value of the capital account which, in turn, was based on the value of five properties that Steven claimed the Debtor did *not* own (including 40 Lakeview Property and Avenue A Property); income of $90,000 from the rent from those same five properties which Steven claimed that the Debtor did *not* own; and a $200,000 note receivable from Robert Schroeder.[117]   The amount of $605,860 is also reflected as "total assets" in the 2012 tax return excerpt that the Court does have.[118]   Compounding the issues with Steven's testimony on these points is the fact that neither he nor Defendant provided a complete copy of the tax return he relied so heavily upon.   This failure further detracts from the substance of Steven's testimony and his credibility.

Additionally, the testimony Steven did provide (on cross-examination) undercuts any notion that the $600,000-$605,860 represented usable value to the Debtor:

Q    With respect to that tax return, Mr. Wong, you testified that there was -- it reflected assets of $600,000 in a capital account, is that correct?

A    The $600,000 that's reflected on the tax return is for the purpose of depreciation of the properties that the LLC managed.  It doesn't mean that the LLC was the actual owner of those properties, but in order to perform the accounting that the LLC has to do for the properties, it has to have some capital values.[119]

---

[115] Dkt. No. 69, Trial Tr. vol. 1, 19:21-20:1.
[116] Dkt. No. 68, Trial Tr. vol. 2, 78:14-81:23 (providing for the submission of the Debtor's complete 2012 tax return to be marked Exhibit D-7 by Friday, November 17, 2017).  The Court indicated that a request for adverse inference would be considered if the complete 2012 return was not produced.  Dkt. No. 68, Trial Tr. vol. 2, 78:18-22.
[117] Dkt. No. 68, Trial Tr. vol. 2, 12:17-13:6; 15:20-16:5.
[118] Ex. P-16.
[119] Dkt. No. 68, Trial Tr. vol. 2, 34:6-15 (emphasis supplied).

When asked by the Trustee on cross-examination:

Q      What assets did this debtor own in 2013?

A      Well, the answer is the same as my previous testimony, is the debtor did not own anything. It managed properties.

Q      And that's the same for 2014, is that correct?

A      Yes.[120]

In sum, Steven's testimony was that the Debtor was solvent based on the value of and rent from properties that the Debtor *did not own* (including the 40 Lakeview Property and the Avenue A Property). Literally seeking to have it both ways, this argument is but one example of the duplicity and gamesmanship exhibited by the Debtor, its principals, the Defendant and their counsel throughout these proceedings. To make matters worse, most of this testimony was based on a 2012 tax return that was never admitted into evidence as a complete document. Thus, Steven's solvency arguments, whether on behalf of the Defendant or the Debtor, are rejected by the Court.

Considering all the evidence and testimony, the Court concludes that Debtor was insolvent when it extended the September 5, 2012 Mortgage to Quincy, as its liabilities (of well in excess of $1,100,000 and in default) were far in excess of its assets (even if the $600,000 in assets Steven claimed the Debtor did *not* own are considered), and it was not paying its debts as they became due. *See* N.J.S.A. § 25:2-23 (a debtor is insolvent "if the sum of the debtor's debts is greater than the debtor's assets, at a fair valuation"; a debtor is presumed to be insolvent if it "is generally not paying [its] debts as they become due"). For these same reasons, the Court rejects the Defendant's counterargument, dependent exclusively upon the discredited testimony of Steven and an incomplete tax return, that the Debtor was solvent.

---

[120] Dkt. No. 68, Trial Tr. vol. 2, 56:11-16 (emphasis supplied).

### **(2) Lack of reasonably equivalent value for the transfer**

Two of the Trustee's four claims under the New Jersey Uniform Fraudulent Transfer Act require the Trustee to prove that the Debtor did not receive reasonably equivalent value for the $200,000 Mortgage that it extended to Quincy on September 5, 2012.[121]  As an initial matter, the Debtor granted a $200,000 Mortgage on a property valued at $120,000.  The Quincy Wong transactions, on their face, do not show that the Debtor received consideration for the Wong Mortgage.  The Wong Note states that Quincy loaned $200,000 to Grace, rather than the Debtor. The Wong Mortgage states that the Debtor gave the Mortgage to Quincy and no consideration inures to the Debtor on the face of these documents.[122]  Nor was there any evidence at trial that the Debtor received any payments on account of the Wong Note or the Schroeder Note.

As noted above, the August 2, 2012 Schroeder Note stated that Robert Schroeder and All Points International Distributors, Inc. borrowed $200,000 from Debtor to be repaid on or before August 1, 2013 on the terms of $200,000 to Debtor; $20,000 to "Quincy Wong loan"; and "$15,000 fee to [Debtor]."[123]

> Q    You testified earlier today that this note provided for the repayment of $200,000 plus interest to your father Quincy Wong, is that correct?
>
> A    Yes.
>
> Q    Show me where in this document it suggests that $200,000 would go to Quincy Wong.
>
> A    It's pretty clear that the $20,000 to Quincy Wong loan is connected with this note.
>
> Q    And am I correct that the only reference to Quincy Wong in this document is regarding $20,000?

---

[121] N.J.S.A. § 25:2-25(b) "Without receiving reasonably equivalent value in exchange for the transfer or obligation." N.J.S.A. § 25:2-27(a) "[I]f the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation."
[122] Exs. P-1 and D-1.
[123] Ex. D-2.

A       As an interest payment for the loan.

Q       Okay. No where in that note does it say that the $200,000 that Mr.
Schroeder is going to pay back to the debtor is going to be used by the
debtor to pay Mr. Quincy Wong, correct?

A       It states that there's a $20,000 payment to Quincy Wong loan.

Q       Now, answer my question. No where in that document does it say that
the $200,000 that Mr. Schroeder was to pay the debtor was then going
to be used by the debtor to pay Quincy Wong, is that correct?

A       That's correct, but it's clearly implied.

Q       Was this obligation created before you gave -- the debtor gave the
mortgage to Quincy Wong?

A       Yes.[124]

Additionally, Steven testified that Quincy never lent money to the Debtor but to Grace and

Steven Wong, who never entered a note or other written agreement to repay Quincy.  Steven's

testimony on cross-examination further supports the Trustee's position that the Debtor received no

consideration for the September 5, 2012 Mortgage to Quincy:

Q       Did your father ever loan any money to 40 Lakeview Drive, LLC?

A       My father's loans were not made out to 40 LLC, 40 Lakeview Drive, LLC.

Q       Am I correct that your father loaned money to you and/or your wife?

A       Checks that he wrote were made out to me or to Grace and, subsequently,
if it was part of this mortgage, utilized by the LLC as the conduit.

Q       Are you aware that your father prepared a chart that was provided to me in
discovery listing dates and amounts of loans he made to you or Grace?

A       Yeah.

Q       Are you aware that he gave me copies of checks supporting those loans?

A       Yes.

---

[124] Dkt. No. 68, Trial Tr. vol. 2, 39:6-40:4.

Q      At any time when he wrote those checks, did he ever execute -- I'm sorry, did you ever execute a promissory note or any other written agreement promising to pay him back?

A      The note was written by 40 Lakeview Drive to memorialize many of those loans.

Q      And you're referring to a note dated September 5th, 2012, is that correct?

A      Yeah.

Q      There were no prior written agreements, or there were no written agreements from you or Grace promising to repay him, is that correct?

A      Not that I recall.

Q      The only promise to repay came from an entity to whom he did not loan money, is that correct?

A      The entity served as a conduit for the transaction which included the note from Robert Schroeder.

Q      <u>So he didn't loan the entity any money, right</u>?

A      <u>He did not write the checks to the entity</u>.[125]

Based on the testimony and evidence at trial, including particularly the terms of the loan documents, Steven's efforts to tie the September 5, 2012 Wong Mortgage and Loan to the August 2, 2012 Schroeder Note fail.  Instead, the Court finds that the $200,000 loan was to Grace (and Steven) and that all or part of that loan was used by Grace and/or Steven to fund the separate loan to Schroeder.  There was no evidence that Quincy ever received the $20,000 payment referenced by Steven (or any other payments) on account of the Quincy loan.  Even if Steven had been able to support the connection that he presumably sought to make between the Schroeder Note and the Quincy Wong transactions (that Quincy lent money to Grace and Steven for their discretionary

---

[125] Dkt. No. 68, Trial Tr. vol. 2, 56:17-57:25 (emphasis supplied).

use; or that Debtor borrowed money from Quincy in its name to pass on to Schroeder), Debtor still received no reasonably equivalent value for the $200,000 Mortgage extended one month later.

For all the above reasons, the Court finds that the Debtor did not receive reasonably equivalent value – or indeed any consideration – for the September 5, 2012 Mortgage that it gave Quincy in the amount of $200,000.  Instead, the loans from Quincy were to Grace and Steven, but the Mortgage securing those loans was given by the Debtor for no consideration.

### (3) Actual fraud under N.J.S.A. § 25:2-25(a)

The Trustee argues that the transfer is actually fraudulent under N.J.S.A. § 25:2-25(a) with respect to present or future creditors:

> N.J.S.A. § 25:2-25.  Transfers fraudulent as to present and future creditors.
>
> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > a.   With actual intent to hinder, delay, or defraud any creditor of the debtor;
> > . . .

N.J.S.A. § 25:2-25(a).

The New Jersey Uniform Fraudulent Transfer Act has its own "badges of fraud" at N.J.S.A. § 25:2-26 to establish fraudulent intent.   "'Badges of fraud' represent circumstances that so frequently accompany fraudulent transfers that their presence gives rise to an inference of intent." *Gilchinsky v. Nat'l Westminster Bank N.J.*, 159 N.J. 463, 476 (1999) (applying the New Jersey Fraudulent Transfer Act).   The New Jersey Supreme Court instructed courts to "balance" the statutory badges "as well as any other factors relevant to the transaction." *Gilchinsky*, 159 N.J. at 489.   "[T]he confluence of several [badges] in one transaction generally provides evidence of an actual intent to defraud," and one badge may be sufficient. *Id.* at 483-84, 490.

In this statutory context, the New Jersey Supreme Court reiterated the axiom that an actor rarely admits fraud, so that "[a]ctual intent often must be established through inferential reasoning, deduced by the circumstances surrounding the allegedly fraudulent act." *Id.* at 477-78 (ultimately identifying seven badges of fraud); *MSKP Oak Grove, LLC v. Venuto*, 875 F. Supp. 2d 426, 437 (D.N.J. 2012) (finding four badges of fraud from the eleven listed in the New Jersey Uniform Fraudulent Transfer Act sufficient to show intentional fraud).

In the instant case, at least six badges of fraud are present under N.J.S.A. § 25:2-26:

    a.   The transfer or obligation was to an insider;

    d.   Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

    e.   The transfer was of substantially all the debtor's assets;

    h.   The value of the consideration received by the debtor was [not] reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

    i.   The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

    j.   The transfer occurred shortly before or shortly after a substantial debt was incurred.[126]

As to insider status, the transfer was to Quincy, the father of Steven, who was a co-owner of the Debtor at the time of the September 5, 2012 Mortgage and an insider by definition under N.J.S.A. § 25:2-22(b)(2) ("[a] relative of a general partner, director, officer, or person in control of the debtor").[127]   As to litigation or the threat of litigation and the timing of the transfer with respect to the imminence of a substantial debt, the Debtor had defaulted on its $1,100,000 line of

---

[126] N.J.S.A. § 25:2-26.
[127] Dkt. No. 68, Trial Tr. vol. 2, 5:2-11, as to Steven's ownership interest.

credit to PNC in June 2012, and PNC sued on its note and mortgage in December 2012.[128]  As to

protection of assets, the Trustee testified and the Court finds that the September 5, 2012 Mortgage

encumbered the Debtor's "one unencumbered sole valuable asset" and "stripped away the only

available equity that existed in the [Debtor]."[129]  As to consideration, the Court has determined,

*supra*, that the Debtor did not receive reasonably equivalent value – or any actual consideration –

for the September 5, 2012 Mortgage.  As to insolvency, the Court has determined, *supra*, that the

Debtor was insolvent when it granted Quincy the September 5, 2012 Mortgage.

For all the foregoing reasons, the Court finds that Debtor's grant of the September 5, 2012

Mortgage to Quincy was an intentionally fraudulent transfer by the Debtor under N.J.S.A.

§§ 25:2-25(a) and 25:2-26 and may be avoided on that basis as well.

The Defendant's counterargument that "Quincy Wong committed no [common law] fraud"

is irrelevant to this case.[130]  The avoidance statutes under which the Trustee filed his Complaint

(11 U.S.C. § 544(b)(1) and N.J.S.A. § 25:2-20 *et seq.*), require the Court to assess the conduct of

the *Debtor*, actual or intentional, in promoting the transfer, not the conduct of the transferee, i.e.,

Quincy.  The Court has examined the Debtor's conduct and financial status and determined that

the Debtor's grant of the September 5, 2012 Mortgage to Quincy constituted both actual and

constructive fraud under N.J.S.A. § 25:2-20 *et seq.*

### (4) <u>Constructively fraudulent transfer to an insider under N.J.S.A. § 25:2-27(b)</u>

In his post-trial submission, the Trustee argued under N.J.S.A. § 25:2-27(b) that the

September 5, 2012 Mortgage represents a constructively fraudulent transfer to an insider for an

antecedent debt, when "the debtor was insolvent at that time, and the insider had reasonable cause

---

[128] Dkt. No. 69, Trial Tr. vol. 1, 18:23-19:14.
[129] Dkt. No. 69, Trial Tr. vol. 1, 19:23; 22:9-10.
[130] Dkt. No. 76, Deft. Post-trial, II, at 3-4.

to believe that the debtor was insolvent."[131]  The Trustee did not adduce sufficient facts at trial to support this claim as there was no testimony or other evidence as to what Quincy (the insider) knew or did not know about the Debtor's insolvency.  Thus, the Trustee's claim on this ground is not sustained.

### (5) Defendant's argument for "no third-party-beneficiary status" for the Chapter 7 Trustee

The Defendant appears to argue that the Chapter 7 Trustee cannot claim "beneficiary" status under the September 5, 2012 Mortgage which the Debtor granted to Quincy.[132]  This argument is also irrelevant to this Adversary Proceeding, as the Trustee's status and authority are derived from 11 U.S.C. §§ 323, 544, and 704.  The claims brought here are direct claims that belong to the Trustee and that he is statutorily entitled to pursue.  *See* 11 U.S.C. § 544(b).  There are no third-party beneficiary claims in the Trustee's Complaint, nor are they an element of the Trustee's affirmative case.  Thus, Defendant's third-party beneficiary argument is rejected as misplaced and irrelevant.

### (6) Defendant's argument for "resulting trust" in favor of Grace and Steven Wong

The Defendant argues that the Avenue A Property is subject to a resulting trust in favor of Grace and Steven Wong.[133]  The Debtor raised this identical argument (using a nearly identical brief) in its September 4, 2017 Objection to the Trustee's *Motion to Strike Debtor's Amended Schedules*.[134]  In the September 15, 2017 Order that resolved the Trustee's Motion, the Court rejected the Debtor's argument for a resulting trust; found that the Debtor had amended its

---

[131] N.J.S.A. § 25:2-27(b); Dkt. No. 75, Pl. Post-trial, at 8-9.
[132] Dkt. No. 76, Deft. Post-trial, II, at 4-5.
[133] Dkt. No. 76, Deft. Post-trial, II, at 5-10.
[134] Main Dkt. No. 278-2, Db. Br. at 19-23, filed Sept. 4, 2017 in objection to the Trustee's August 22, 2017 *Motion to Strike Debtor's Amended Schedules* at Main Dkt. No. 270.  Debtor filed related Objections and a Reply at Main Dkt. Nos. 278, 279, 281, 284.

schedules in bad faith to exclude the Avenue A Property from the bankruptcy estate; and held "that

the Debtor is judicially estopped from asserting inconsistent and/or conflicting positions as to the

ownership of the Property."[135]  For those same reasons and those reasons set forth below, the Court

rejects the Defendant's identical argument that the Avenue A Property is subject to a resulting trust

for the benefit of Grace and Steven Wong.

Restatement (Third) of Trusts § 7 (Am. Law Inst. 2003) defines a resulting trust as follows:

> A resulting trust is a reversionary, equitable interest implied by law in
> property that is held by a transferee, in whole or in part, as trustee for the
> transferor or the transferor's successors in interest.

The Seventh Circuit in *United States v. Marx*, 844 F.2d 1303, 1309 (7th Cir. 1988) explained:

> A resulting trust, unlike a constructive trust, seeks to carry out a donative
> intent rather than to thwart an unjust scheme. . . .  The reasoning behind
> the imposition of a resulting trust in favor of the payor is that persons
> usually don't give up something for nothing.

*United States v. Marx*, 844 F.2d 1303, 1309 (7th Cir. 1988).  "Because a resulting trust seeks to

further the intent of the parties who entered the transaction," the Court's foremost obligation is to

determine "the intent of the parties *when they consummated the transaction*."  *Secure Leverage

Group, Inc. v. Bodenstein* (*In re Bodenstein*), 558 B.R. 226, 234 (N.D. Ill. 2016) (emphasis

supplied).  The evidence establishing a resulting trust must be clear, convincing, and leave no

doubt that a resulting trust was intended at the time of transfer. *Bhagat v. Bhagat*, 217 N.J. 22, 47

(2014); *Taylor v. Rupp* (*In re Taylor*), 133 F.3d 1336, 1341 (10th Cir. 1998), *cert. denied*, 523 U.S.

873 (1998).

No resulting trusting has been proven here, by clear and convincing evidence or otherwise.

Instead, for all the reasons previously stated and summarized again below, the evidence was clear,

---

[135] Main Dkt. No. 291, *Order Striking Debtor's Amended Schedules and Denying Debtor's Cross Motion to Compel Abandonment*, filed on Sept. 15, 2017, at 2.

convincing and indeed overwhelming that the Avenue A Property was and is owned by the Debtor, with no resulting trusting in favor of Grace and Steven intended at the time of its transfer to the Debtor in 2009 or at any time thereafter.

In the instant case, the Debtor adduced no evidence at trial to indicate Grace and/or Steven allowed the April 14, 2009 Deed to be executed and then recorded on May 22, 2009 in Debtor's name, with the intent that Grace and/or Steven retain a beneficial interest in the Property, other than the self-serving, after-the-fact statements of Steven.[136]  The clear and convincing evidence that refutes these self-serving statements includes the undisputed facts that:

- The Property remained continuously titled in the Debtor from the May 22, 2009 recording of the Deed to the present;

- The Debtor granted the September 5, 2012 Mortgage against the Avenue A Property to Quincy over the following "Promise" and warrant on the face of the Mortgage signed by Grace on behalf of the Debtor:

  > Title to the premises is warranted.  This means that Mortgagor [Debtor] owns the Property and will defend said ownership against all claims.[137]

- The Debtor, over the signature of Grace S. Wong, filed Schedule A on August 11, 2015 listing the Property as an asset of the Debtor without qualification;[138]

- The Debtor and its current principal, Grace Wong, and its former principal, Steven Wong (to the extent that he participated), did not challenge the Debtor's ownership interest in the Property until February 3, 2017, when Debtor objected to the Trustee's application to retain a realtor to sell the Property.[139]  The Debtor, through its principal, challenged the Debtor's interest repeatedly thereafter, until the Court compelled it to cease with the entry of the September 15, 2017 *Order Striking Debtor's Amended Schedules and Denying Debtor's Cross Motion to Compel Abandonment*, which ordered the Debtor "judicially estopped from asserting inconsistent and/or conflicting positions as to the ownership of the Property."[140]

---

[136] Dkt. No. 68, Trial Tr. vol. 2, 7:19; 7:21; 8:3-15.
[137] Ex. D-1, Sept. 5, 2012 mortgage.
[138] Dkt. No. 67, Sch. A and signature pp. at 3, 33.
[139] Main Dkt. Nos. 190, 187.
[140] Main Dkt. No. 291.

As was noted above, the use of a corporation or LLC to purchase real property is a common ownership structure that provides various benefits to the owner of the legal entity, including (but by no means limited to) the insulation of the owners from liability related to the corporate owned property.[141]   The Wongs themselves used this structure in this case when they formed and funded the Debtor's acquisition of the Avenue A Property.   They also used the same structure in the 69 North Franklin case that was also before this Court.   It was only after Defendant, and the Wongs realized that the Trustee was challenging the Mortgage and attempting to sell the Avenue A Property that the resulting trust argument was contrived by the Wong and the Defendant.

A fundamental principle under New Jersey law is that corporations and limited liability companies are legal entities with their own assets separate and distinct from their shareholders and interest holders.   *Richard A. Pulaski Constr. Co. v. Air Frame Hangars, Inc.,* 195 N.J. 457, 472 (2008).   The primary purpose of incorporation is "to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs."   *Spring Creek Holding Co., Inc. v. Shinnihon U.S.A. Co., Ltd.,* 399 N.J. Super. 158, 188 (App. Div.), *cert. denied*, 196 N.J. 85 (2008) (internal citations omitted).   To accept Defendant's argument would mean that virtually any asset purchased by a private limited liability company or corporation is merely held in trust for the shareholders or members of the entity, based entirely on the members' after-the-fact say-so.   This proposition is contrary not only to New Jersey law, but also to the express terms of the documents evidencing the transactions at issue in this case.

In sum, the Defendant has not come close to carrying his burden to show by clear and convincing evidence that the Property is held in a resulting trust for the benefit of Grace and/or

---

[141] *See, e.g., In re D'Amore*, 472 B.R. 679, 686-87 (Bankr. D.N.J. 2012); *Kuhn v. Tumminelli*, 366 N.J. Super. 431, 439-440 (App. Div.), *cert. denied*, 180 N.J. 354 (2004).

Steven and therefore is not property of the estate.  The Defendant's defense on this basis is rejected.

## VI.    **CONCLUSION**

For all the foregoing reasons, the Court will enter judgment voiding the Mortgage and allowing the Avenue A Property to be sold free and clear of the lien of the Mortgage for the benefit of the Debtor's estate.

/s/Vincent F. Papalia
VINCENT F. PAPALIA
United States Bankruptcy Judge

Dated:  September 6, 2018